UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DIXIE METAL PRODUCTS, INC.,

    Plaintiff,

v.                                                Case No.: 5:21-cv-00441-JSM-PRL

PEDDINGHAUS CORPORATION,

    Defendant.
_____/

## ANSWER AND COUNTERCLAIM

    Defendant, PEDDINGHAUS CORPORATION (hereinafter "Peddinghaus"), answers the Complaint of Plaintiff, DIXIE METAL PRODUCTS, INC. (hereinafter "Dixie Metal"), and asserts a breach of contract counterclaim against Plaintiff as follows:

### PARTIES, JURISDICTION, AND VENUE

    1.    This is an action for damages in excess of $30,000.00, exclusive of attorneys' fees, costs, and interest.

    **ANSWER:** Admitted that Dixie Metal is seeking in excess of $30,000.00 exclusive of attorneys' fees, costs, and interest but denied that it is entitled to any relief.

    2.    Plaintiff, DIXIE METAL PRODUCTS, INC., is and at all times material to the allegations in this Complaint, was a Florida corporation with its principal place of business in Marion County, Florida.

    **ANSWER:** Admitted.

1

3. Defendant, PEDDINGHAUS CORPORATION, is and at all times material to the allegations in this Complaint, was a foreign corporation incorporated under the laws of Delaware with its principal place of business in Illinois. Peddinghaus has done business in Florida, despite not being registered to do so, and has continuous, substantial, and regular business contacts within the state, including deploying technical and sales support staff.

**ANSWER:** Admitted that now, and at all times relevant to the allegations in the Complaint, Peddinghaus is/was incorporated in Delaware and has/had its principal place of business in Illinois. Also admitted that Peddinghaus has done business in Florida. Otherwise denied.

4. At all times material to the allegations in this Complaint, Defendant Peddinghaus was in the business of advertising, promoting, marketing, distributing, manufacturing, selling and installing structural steel processing machinery in the State of Florida.

**ANSWER:** Admitted.

5. This Court has jurisdiction over Defendant under Fla. Stat. §48.193(1)(a)(7) as Defendant breached a contract in the state of Florida by failing to perform acts required by the contract to be performed in this state.

**ANSWER:** Admitted that the state court had jurisdiction but noted that the case has been removed to federal court. Denied that Peddinghaus breached the parties' contract.

6. Venue is proper in this judicial circuit, pursuant to Fla. Stat. §47.051, as Defendant is a foreign corporation and the cause of action accrued in Marion County, Florida. Additionally, the parties' contract, attached hereto as Exhibit "A", contains a venue selection clause stipulating that the venue of all disputes shall lie exclusively in Marion County, Florida.

**ANSWER:** Admitted that venue was proper in the state court but noted that

the case has been removed to federal court. Denied that the cause of action accrued in Marion County, Florida. Denied that Dixie Metal's purchase order memorializes the agreement between the parties.

## GENERAL ALLEGATIONS

7. Plaintiff Dixie Metal specializes in the design, fabrication, and distribution of various metal products for use in general construction, utilities, and sewer/water/power plants.

**ANSWER:** Denied on the basis of insufficient facts or knowledge.

8. Defendant Peddinghaus is a manufacturer and merchant of structural steel processing machinery.

**ANSWER:** Admitted.

9. In or about November 2019, Dixie Metal ordered from Peddinghaus an "Advantage 2 Beam Line, Saw and Conveyer" System (the "Advantage 2 System") for use in its Ocala, Florida, facility.

**ANSWER:** Admitted.

10. This transaction between the parties was subsequently memorialized by Dixie Metal's Purchase Order submitted to Peddinghaus on January 21, 2020 (the "Agreement"), attached hereto as Exhibit "A".

**ANSWER:** Admitted that the parties entered into a contractual agreement around this time. Denied that Dixie Metal's purchase order memorializes the agreement between the parties.

11. As evidenced by the above-mentioned Purchase Order, the Advantage 2 System was purchased by Dixie Metal at a total cost of approximately $727,427.00. This amount, minus the $36,371.00 allegedly owed to Peddinghaus

3

upon thirty (30) days of error-free operation of the Advantage 2 System, has been paid by Dixie Metal.

**ANSWER:** Admitted that the above describes the agreed cost of the Advantage 2 System but otherwise denied.

12. Pursuant to the terms of the Agreement, shipment of the goods (i.e., the Advantage 2 System) or commencement of work by the Vendor (i.e., Peddinghaus installing said Advantage 2 System) constituted acceptance of the purchase order's terms and conditions.

**ANSWER:** Denied that the above language reflects the parties' agreement.

13. The Agreement's terms and conditions, under paragraph "8" entitled, "Warranty" specifies, in part, that Peddinghaus "warrants that the goods delivered or services performed will confirm strictly to the specifications, drawings or sample specified or furnished and will be fit and sufficient for the purpose intended, of merchantable quality of good material and workmanship, free from defect, and in conformity with all applicable federal, state and local laws respecting the goods or services."

**ANSWER:** Denied that the above language reflects the parties' agreement.

14. The Advantage 2 System was installed in Dixie Metal's facility by Peddinghaus in or about May of 2020.

**ANSWER:** Admitted.

15. The Advantage 2 System, from the time it was installed by Peddinghaus and to the time this Complaint is being filed, has failed to operate as intended with break downs exceeding thirty (30) days. Specifically, issues with the System's tool changer mechanism and associated software and hardware resulted in the machine failing to operate normally and error-free for more than a week at a time.

**ANSWER:** Denied.

16. As a result of the defective nature of the Advantage 2 System, Dixie

Metal would explain to Peddinghaus the issues it was facing with the System and make requests to Peddinghaus on numerous occasions that it remedy these serious problems. A copy of such requests by Dixie Metal is attached hereto as Composite Exhibit "B". While Defendant Peddinghaus would attempt to make all necessary and required repairs, such repairs were ultimately nothing more than "band-aids" that would soon after result in the Advantage 2 System failing to operate once again.

**ANSWER:** Admitted that Dixie Metal submitted requests to Peddinghaus to repair the Advantage 2 System to which Peddinghaus responded but otherwise denied.

17.     Eventually, nearly six (6) months after installation, with the System's defects unresolved, Defendant would begin to ignore its responsibilities owed to Plaintiff and refuse to send the necessary technicians to fix the Advantage 2 System and make said System operational, as Defendant warranted and agreed.

**ANSWER:** Denied.

18.     As a result of Peddinghaus' conduct, Dixie Metal has been damaged. Dixie's damages include, but are not limited to, increased labor costs, down time, loss of productivity, inefficiency damages, loss of sales/profits and other special damages arising from the non-performance of the System.

**ANSWER:** Denied.

## COUNT I – BREACH OF CONTRACT

19.     Dixie Metal repeats and realleges all allegations in Paragraphs 1 through 18 as if each paragraph was fully repeated verbatim herein.

**ANSWER:** Peddinghaus incorporates its answers to Paragraphs 1 through 18 above with the same force and effect as if fully set forth herein.

20.     This is an action against Defendant Peddinghaus for breach of contract.

**ANSWER:** Admitted that Dixie Metal claims Peddinghaus has breached the parties' contract but denied that such breach actually occurred.

21. On or about January 21, 2020, Dixie submitted to Peddinghaus a purchase order, which constituted a binding contract for the purchase and installation of the Advantage 2 System, a copy of which has been attached hereto as Exhibit "A".

**ANSWER:** Admitted that Dixie Metal submitted a purchase order to Peddinghaus around this time but denied that the Dixie Metal purchase order memorializes the agreement between the parties.

22. This agreement stated that shipment of goods or commencement of work by the vendor (i.e., Peddinghaus) will constitute acceptance of the agreement's terms and conditions.

**ANSWER:** Admitted that the Dixie Metal purchase order contained the above language but denied that the Dixie Metal purchase order memorializes the agreement between the parties.

23. Peddinghaus accepted the purchase order and its terms and conditions by shipping the Advantage 2 System to Dixie Metal's Ocala facility, and installing said System for operational use.

**ANSWER:** Denied.

24. Dixie fully performed under the purchase order agreement by paying the necessary consideration due to Defendant, minus the remaining balance of $36,371.00 owed after thirty (30) days of error-free operation of the Advantage 2 System (which did not occur), making the premises available for maintenance visits and informing Peddinghaus when the System was not performing properly. *See* Composite Exhibit "B".

**ANSWER:** Denied.

6

25.     Defendant has failed to and refused to fully perform under the Contract, and in doing so has breached the Contract by, among other things, delivering defective and deficient equipment and failing to repair and correct said deficient equipment pursuant to the Agreement's warranty.

**ANSWER:** Denied.

26.     Dixie has been damaged by Defendant's breach of the Contract and the systematic and continuous nonperformance of the Advantage 2 System.

**ANSWER:** Denied.

27.     All conditions precedent to this action have occurred, have been waived, or have otherwise been satisfied.

**ANSWER:** Denied.

28.     WHEREFORE, Plaintiff DIXIE METAL PRODUCTS, INC. respectfully requests that this Court enter judgment against Defendant PEDDINGHAUS CORPORATION for compensatory damages, special damages pre-judgment and post-judgment interest, court costs, and any other relief deemed just and appropriate under the circumstances.

**ANSWER:** Denied that Dixie Metal is entitled to any relief.

## COUNT II – RESCISSION

29.     Dixie Metal repeats and realleges all allegations in Paragraphs 1 through 18 as if each paragraph was fully repeated verbatim herein.

**ANSWER:** Peddinghaus incorporates its answers to Paragraphs 1 through 18 above with the same force and effect as if fully set forth herein.

30.     This is an equitable cause of action against Peddinghaus to rescind and cancel the Agreement based upon fraud, which is pled in the alternative to Count I.

**ANSWER:** Admitted that Dixie Metal claims it is entitled to rescission but denied that such relief is appropriate.

31.   On or about January 21, 2020, Dixie submitted to Peddinghaus a purchase order, which constituted a contract for the purchase of the Advantage 2 System, a copy of which has been attached hereto as Exhibit "A".

**ANSWER:** Admitted that Dixie Metal submitted a purchase order to Peddinghaus around this time but denied that the Dixie Metal purchase order memorializes the agreement between the parties.

32.   Dixie Metal submitted the purchase order to Peddinghaus based upon representations from Peddinghaus that the Advantage 2 System would operate as designed, in exchange for payment of $727,427.00.

**ANSWER:** Denied.

33.   Dixie fully performed under the purchase order agreement by paying the necessary consideration due to Defendant, minus the remaining balance of $36,371.00 owed after thirty (30) days of error-free operation of the Advantage 2 System, which has not occurred.

**ANSWER:** Denied.

34.   The representations from Peddinghaus that the Advantage 2 System would operate as specified and that Peddinghaus would rectify the issues with the System were false and fraudulently made as the System still fails to perform correctly and Peddinghaus has refused to make good on its representations.

**ANSWER:** Denied.

35.   Peddinghaus made those false representations to induce Dixie Metal to pay the full purchase price for the Advantage 2 System, but never intended to deliver on those promises at the time those promises were made.

**ANSWER:** Denied.

36.     Dixie Metal detrimentally relied on the false representations made by Peddinghaus.

**ANSWER:** Denied.

37.     Dixie Metal has rescinded the agreement and notified Peddinghaus of such rescission.

**ANSWER:** Denied.

38.     Dixie Metal has offered and restates its offer to have the delivered Advantage 2 System returned to Peddinghaus and restore the benefit of the delivered equipment to Peddinghaus to put the parties back into the place they were in before entering into the Agreement.

**ANSWER:** Denied.

39.     Dixie Metal has no adequate remedy at law.

**ANSWER:** Denied.

40.     WHEREFORE, Plaintiff DIXIE METAL PRODUCTS, INC. respectfully requests that this Court enter judgment against Defendant PEDDINGHAUS CORPORATION for interest, court costs, and any other relief deemed just and appropriate under the circumstances for rescission for fraud, ordering rescission and cancellation of the Contract, restoring the parties to status quo which existed between the parties prior to the making of the Contract, balancing the equities between the parties, requiring Defendant Peddinghaus to pay back all sums due to Plaintiff Dixie Metal, ordering the return of all delivered Equipment to Defendant, requiring Defendant to pay Plaintiffs costs, and granting any other relief deemed just and appropriate under the circumstances.

**ANSWER:** Denied that Dixie Metal is entitled to any relief.

## COUNTERCLAIM – BREACH OF CONTRACT

Defendant, Peddinghaus, alleges as follows as and for its counterclaim for breach of contract against Plaintiff, Dixie Metal:

## JURISDICTION AND VENUE

1.      This is a compulsory counterclaim because it arose "out of the transaction or occurrence that is the subject matter of" Dixie Metal's claims and does not require the addition of a new party. Fed. R. Civ. P. 13(a)(1). As a result, this Court "automatically" has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *Vernell v. Nuvell Credit Co. LLC*, No. 215CV674FTM38MRM, 2016 WL 931104, at *3 (M.D. Fla. Mar. 11, 2016).

2.      Venue is proper in this district under 28 U.S.C. § 1391 as the counterclaim-defendant, Dixie Metal, resides in Marion County, Florida and a substantial part of the events or omissions giving rise to the claim occurred there.

## FACTUAL BACKGROUND

3.      On or around January 28, 2020, Peddinghaus and Dixie Metal entered into a contract pursuant to which Dixie Metal agreed to purchase an Advantage 2 System from Peddinghaus for $727,427.00.

4.      Peddinghaus and Dixie Metal agreed that Peddinghaus's terms and conditions would provide the contractual language for this transaction.

5. Installation of the Advantage 2 System at Dixie Metal's facility began during the month of April 2020. It was completed in the month of May 2020.

6. Peddinghaus prepared and sent the final invoice for the Advantage 2 System on or around May 13, 2020. This invoice included the remaining cost of the machine—$36,371.00—as well as freight charges in the amount of $3,275.00 for a total of $39,646.00.

7. Dixie Metal subsequently insisted that it would not pay the final invoice until the Advantage 2 System ran for thirty consecutive days without a major fault, not including faults caused by operator error.

8. The Advantage 2 System has run for thirty days without a major fault, not including faults caused by operator error.

9. Dixie Metal refuses to pay the amount it owes to Peddinghaus.

10. As a result of Dixie Metal's breach of contract, Peddinghaus has been required to retain the undersigned counsel and has agreed to pay the undersigned counsel's reasonable fees and costs.

11. Any other conditions precedent to Peddinghaus instituting and maintaining this counterclaim have occurred or have been excused or waived.

## COUNT I – BREACH OF CONTRACT

12. Peddinghaus incorporates its allegations in Paragraphs 1 through 11 above with the same force and effect as if fully set forth herein.

13. Peddinghaus and Dixie Metal entered into a valid contract pursuant to which Dixie Metal owes Peddinghaus the $39,646.00 charged in the May 13, 2020 invoice.

14. Dixie Metal's refusal to pay the final invoice constitutes a material breach of contract.

15. Peddinghaus has been damaged by Dixie Metal's breach.

16. WHEREFORE, Defendant, PEDDINGHAUS CORPORATION, respectfully requests that this Court enter judgment against Plaintiff, DIXIE METAL PRODUCTS, INC., in the form of compensatory damages as well as interest, court costs, attorneys' fees to the extent they are allowable by law or contract, and any other relief deemed just and appropriate under the circumstances.

Dated:  September 21, 2021

Respectfully submitted,

STUMPHAUZER FOSLID
SLOMAN ROSS & KOLAYA, PLLC
Two South Biscayne Boulevard
Suite 1600
Miami, FL  33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

By: */s/ Ian M. Ross*
Ian M. Ross
Florida Bar No. 091214
iross@sfslaw.com
Jorge Pérez Santiago
Florida Bar No. 91915
jperezsantiago@sfslaw.com

James W. Ducayet
*Pro Hac Vice*
jducayet@sidley.com

*Counsel for Defendant Peddinghaus Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of September, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, causing a copy of the foregoing document to be served on all counsel of record via Notice of Electronic Filing.

/s/ Ian M. Ross
IAN M. ROSS

## SERVICE LIST

THE SOTO LAW GROUP, P.A.
Oscar E. Soto, Esq.
oscar@sotolawgroup.com
doug@sotolawgroup.com
rebecca@sotolawgroup.com
eservice@sotolawgroup.com
Coastal Tower, Suite 400
2400 Commercial Boulevard
Fort Lauderdale, Florida 33308
Tel:   (954) 567-1776
Fax:   (954) 567-1778